UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HERMES ARAQUE, | ) | CASE NO. 4:10 CV 2545 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| RODDING RUSHING, et al. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Respondents. | ) | |

Before the court is pro se petitioner Hermes Araque's above-captioned Petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. Mr. Araque, who is incarcerated at the Northeast Ohio Correctional Center in Youngstown, Ohio, brings this action against the Bureau of Prisons (BOP) and N.E.O.C.C. Warden Roddy Rushing. He is challenging the BOP's refusal to allow him to be considered for early release under the provisions of the Second Chance Act.

Background

Mr. Araque pleaded guilty to violating a federal crime in the United States District Court for the Eastern District of New York. United States v. Araque, No. 4:09cr0209 (E.D. NY 2009). The court sentenced him to serve an undisclosed term in prison on January 15, 2010.

The Petition does not contain a narrative of relevant facts in support of Mr. Araque's request. Instead, the Court looks to the attachments he filed in the process of exhausting his administrative remedies. The first is an Inmate Request to Staff dated August 23, 2010. He requested assistance to pursue his "rights under 18 U.S.C. § 3621(b) & 3624(c) as Second Chance Act of 2007." Because Mr. Araque describes himself as a legal resident classified as a non-violent prisoner, he believes he meets the criteria for consideration under the Second Chance Act. He asked for early release to Home Detention. The request was denied by prison staff on August 30, 2010 based on Mr. Araque's "immigration status."

A subsequent Informal Resolution Form filed by Mr. Araque was also denied. The Staff Response explained that Mr. Araque's case manager was consulted about the issue. It was determined that, "due to inmate Araque's detainer," he was not eligible for home detention.

Mr. Araque continued to pursue his administrative request for consideration under the Second Chance Act through the Corrections Corporation of America (CCA) Grievance Officer. The Grievance Officer responded on October 19, 2010 and denied his request. The Officer explained that the BOP applied a Public Safety Factor (PSF) of "Alien" to Mr. Araque because he is not a citizen of the United States. Moreover, with a detainer lodged against him for possible deportation, the BOP considers him a flight risk. Because the BOP is obligated to act on the detainer lodged against Mr. Araque, it cannot place him in a program which would jeoapardize the BOP's ability to produce the Petitioner at the end of his federal sentence. The Grievance Officer attached a copy of the Second Chance Act for Petitioner's reference.

Analysis

Mr. Araque asserts the BOP is obligated to consider him for home detention under

the Second Chance Act because he is a non-violent offender. Without the opportunity to be considered for early release, Petitioner maintains his right to due process has been violated. He moves the Court for an Order directing the BOP to evaluate his sentence for eligibility under the provisions of the Second Chance Act.

He seeks a waiver of the requirement to exhaust his administrative remedies. Petitioner maintains "C.C.A. does not offer any available recourse or remedies for adequate relief." (Pet. at 4.) In the alternative, he argues the "lenghty [sic] administrative process would [have] extended easily beyond my schedule[d] release and thereby mooting my legal claim." (Pet. at 4.) On this basis, he argues administrative exhaustion would be futile and "violates our due process."

Initial Review

This matter is before the court for initial screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir.2001). As Mr. Araque is appearing pro se, his petition is held to less stringent standards than those drafted by attorneys. Burton v. Jones, 321 F.3d 569, 573 (6th Cir.2003); Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir.1999). For the reasons set forth below, however, the petition lacks merit and is denied.

Exhaustion

"[F]ederal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981). The BOP maintains an Administrative Remedy Program through which inmates may seek formal review of issues relating to any aspect of their confinement.

*See* 28 C.F.R. § 542.10(a). The Program applies only to inmates in "institutions operated by the Bureau" and to inmates "designated to contract Community Corrections Centers." N.E.O.C.C. is a private prison facility for which staff of the Correctional Programs Division in the BOP's Central Office provide oversight. While N.E.O.C.C. may qualify as a non-federal facility to which the Administrative Program does not apply, *see* 28 C.F.R. § 542.10(b),[1] the Court cannot ignore the fact that administrative remedies were available to Mr. Araque.

Petitioner's own actions in filing an inmate request and grievance demonstrate that administrative remedies were available to him. Where, as here, exhaustion of administrative remedies is not jurisdictional, this Court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990). Upon review of the substance of Mr. Araque's issue before this Court, judicial economy dictates reaching the merits, which are "easily resolvable against [the] petitioner." See Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 1523(1997)(Court would decide case on Teague grounds, rather than prolong litigation by remanding for consideration of procedural issues); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir.1998) ("The simplest way to decide a case is often the best.")

28 U.S.C. §2241

Mr. Araque's claim that his ineligibility to seek early release under the Act deprives him of liberty without due process, in violation of the Fifth Amendment, lacks merit. See, e.g., Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of

---

[1] That section of the regulation states that the Administrative Remedy Program "does not apply to inmates confined in other non-federal facilities."

confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). The Supreme Court has clarified the extent to which a prisoner may exercise his right to due process, as follows:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.... The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Twenty years later, the Court further clarified that limitations to which liberty interests are conferred as a result of government action. In those cases, a liberty interest is

> generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 742, 484 (1996); see Tunnicliffe v. Bureau of Prisons, No. 06-CV-49-HRW, 2006 WL 1360802 (E.D.Ky. May 15, 2006) (denying habeas and injunctive relief, holding that there is no protected liberty interest in C.C.C. placement).

The same statute Mr. Araque invokes to assert his 'right' to consideration under the Second Chance Act is the same statute that provides the BOP discretion with regard to the manner in which it manages prison life:

> (a) A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons. [...]
>
> (b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability.

18 U.S.C. § 3621(a) & (b). Congress clearly granted the BOP broad discretion to determine where prisoners will serve their terms of imprisonment. Subsection 3621(a) directs that people who must serve terms of imprisonment be given over to the custody of the BOP. The first sentence of subsection 3621(b) uses mandatory language to create a duty in the BOP to do something with the prisoners in their custody, namely place them. The second sentence of the subsection authorizes the BOP to place prisoners in "any available penal or correctional facility." Thus, the statute commits federal prisoners to the custody of the BOP, directs the Bureau do something to place people so committed, and grants the BOP authority to select the prisoner's place of imprisonment.

There is no suggestion of any limitation on the Bureau's authority except that the facility chosen must (1) be a "penal or correctional facility"; and, (2) meet "minimum standards of health and habitability established by the Bureau." Hence, the only apparent limitation on the Bureau is that it choose a place that is a "penal or correctional facility."

Petitioner suggests that within that discretion, he is entitled to consideration under the Second Chance Act, which states, in part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions

6

may include a community correctional facility.

18 U.S.C. § 3624(c)(1)(emphasis added). Here, the BOP has determined that it is not practicable to include deportable aliens in the class of prisoners eligible for placement in a Community Control Center (C.C.C.) or Home Confinement. *See* 18 U.S.C. § 3624(c)(2)

To support the BOP's determination, the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230 (2001) is instructive. The BOP's discretion under 18 U.S.C. § 3621(e)(2)(B) was central to the Court's decision in Lopez. Lopez, 531 U.S. at 238. Section 3621(e)(2)(B) provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons." The Lopez Court concluded that the BOP had the discretion to exclude inmates, whose sentences were enhanced by possessing a firearm when they committed an otherwise nonviolent crime, from having their sentences reduced by participating in the drug abuse program. Lopez, 531 U.S. at 240. The Supreme Court relied upon the use of the phrase "may be reduced" to conclude that the BOP has the discretion to decide whether a category of inmates eligible for consideration under § 3621(e)(2)(B) will be permitted to have their sentence reduced. Lopez, 531 U.S. at 241.

While the Second Chance Act mandates the BOP allow prisoners to spend their final months under conditions that will permit them to adjust to reentry into the community, it only provides the BOP "may include a community confinement facility," just as § 3621(b) in Lopez provided the BOP "may designate any available penal or correctional facility." Moreover, the mandate to consider placement under the Act is qualified by the phrase "to the extent practicable." This clearly does not limit the BOP's discretion to determine whether an inmate is eligible for C.C.C. placement or home confinement under the Second Chance Act.

7

Contrary to Mr. Araque's assertions, the decision to exclude him from consideration for eligibility under the Second Chance Act is not arbitrary. While he refers to himself as a "legal resident," the lodging of a detainer by immigration officials suggests non-citizen status. That is not, however, at issue before this Court. Instead, the facts illustrate Mr. Araque is a deportable alien who may be subject to removal. Because of his PSF of "Deportable Alien," he is subject to increased security measures, including ineligibility for early release consideration under 18 U.S.C. § 3621(e)(2)(B). Petitioner's classification, and resultant ineligibility for certain BOP programming, does not impose an atypical and significant hardship on him. A prisoner's classification and eligibility for rehabilitative programs in the federal system are matters delegated by Congress to the discretion of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process." Moody, 429 U.S. at 88 n. 9. Claims based on classification procedures do not state constitutional claims. See id. Thus, as concluded by other courts specifically addressing this matter and Lopez, in general, the BOP may exclude deportable aliens from consideration under the Second Chance Act.

## Conclusion

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. Further, Petitioner's Motion to Proceed In Forma Pauperis is granted. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

*/s/ Donald C. Nugent 4/4/11*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE